# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRENCE CHEATHAM, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) ) Case No. CIV-21-339-F |
| ALEJANDRO MAYORKAS,<br>Secretary, U.S. Department of<br>Homeland Security, | ) ) ) ) |
| Defendant. | ) ) |

## **ORDER**

Defendant Alejandro Mayorkas, Secretary of the United States Department of Homeland Security (Mayorkas), has moved for summary judgment under Rule 56, Fed. R. Civ. P. Doc. nos. 33, 34. Plaintiff Terrence Cheatham (Cheatham) has responded, opposing the requested relief. Doc. no. 45. Mayorkas has replied. Doc. no. 48. The matter is fully briefed and ripe for determination.

I.

Cheatham, an African-American and homosexual male, was formerly employed by the Transportation Security Administration (TSA) as a Transportation Security Officer (TSO) at Oklahoma City's Will Rogers World Airport. TSA is a component of the United States Department of Homeland Security. Cheatham alleges race and sex discrimination claims under Title VII of the Civil Rights Act of

1964 (Title VII), 42 U.S.C. § 2000e, *et seq*. Specifically, Cheatham alleges disparate treatment by his employer in the termination of his employment.[1]

Mayorkas seeks entry of summary judgment in his favor on Cheatham's discrimination claims.

II.

Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Rule 56(a), Fed. R. Civ. P. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. In adjudicating a motion for summary judgment, the court views "the facts and all reasonable inferences those facts support, in the light most favorable to the nonmoving party." Evans v. Sandy City, 944 F.3d 847, 852 (10th Cir. 2019).

III.

To avoid summary judgment on a Title VII claim of discrimination based on race or sex, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). *See*, Bekkem v. Wilkie, 915 F.3d 1258, 1267 (10th Cir. 2019). Under the McDonnell Douglas framework, "a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Id*. (quotation marks and citation omitted). "The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision. If the employer does so, the

---

[1] In his complaint, Cheatham alleges Title VII race and sex discrimination claims based on four disparate treatment incidents preceding his termination. He also alleges a Title VII sex discrimination claim based upon a hostile work environment. In a previous order, the court, pursuant to Rule 12(b)(6), Fed. R. Civ. P., dismissed with prejudice the disparate treatment claims and dismissed without prejudice the hostile work environment claim. *See*, doc. no. 22.

burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id*. (quotation marks and citation omitted).

1.

Because Cheatham proffers no direct evidence of discrimination, the court analyzes his claims under the burden-shifting McDonnell Douglas framework. To establish a prima facie case of race or sex discrimination, Cheatham must proffer evidence tending to show that he is a member of a protected class, he suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination. *See*, Bennett v. Windstream Communications, Inc., 792 F.3d 1261, 1266 (10th Cir. 2015). Mayorkas does not challenge Cheatham's ability to proffer evidence of membership in a protected class (African-American and homosexual) or that he suffered an adverse employment action (termination). Instead, Mayorkas challenges Cheatham's ability to proffer evidence tending to show that his termination occurred under circumstances giving rise to an inference of discrimination.

"An inference of discrimination can arise from an employer's favoritism toward a similarly situated employee who is not part of the protected class." Ibrahim v. Alliance for Sustainable Energy, LLC, 994 F.3d 1193, 1196 (10th Cir. 2021). "Employees are similarly situated when they share a supervisor or decision-maker, must follow the same standards, and engage in comparable conduct." *Id*.; *see also*, Smothers v. Solvay Chemicals, Inc., 740 F.3d 530, 540 (10th Cir. 2014) ("To be similarly situated to the plaintiff, the other employee must share the same supervisor or decision maker.") (quotation marks and citation omitted); E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 801 (10th Cir. 2007) ("Individuals are considered similarly-situated when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of

comparable seriousness.") (quotation marks and citation omitted).  Here, Cheatham seeks to support an inference of discrimination with a showing that three non-protected TSO employees, who allegedly engaged in comparable conduct to Cheatham, were treated differently.[2]  The three employees are Timothy Fenno (Fenno), Monica Regouby (Regouby), and Zachary Wynns (Wynns).

Viewing the evidence in Cheatham's favor, the court finds that the evidence is insufficient to raise a genuine issue of material on the question of whether he and the other employees were similarly situated.  According to the evidence, Cheatham was terminated after a male airline passenger complained orally and in writing about his behavior on January 21, 2019.  Gregory Graffigna (Graffigna), Cheatham's supervisor, was involved in the decision to terminate him.  Cheatham testified in deposition that Regouby had multiple complaints from airline passengers, but she was not terminated.  However, Cheatham's testimony does not show that he and Regouby shared Graffigna as a supervisor for disciplinary purposes or that he and Regouby engaged in conduct of comparable seriousness leading to an airline passenger complaint.  And Cheatham does not proffer any other evidence to make that showing.[3]

---

[2] The court notes that the Tenth Circuit has held that to make out a prima facie case of discriminatory discharge, a plaintiff need not provide a "comparison to a person outside of the protected class." Kendrick v. Penske Transp. Servs. Inc., 220 F.3d 1220, 1227-1229 (10th Cir. 2000).  A plaintiff need only show that: "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." Id. at 1229.  However, Cheatham does not advocate that prima facie case in his briefing.  Instead, he advocates the comparison of persons outside his protected classes to show that his termination occurred under circumstances giving rise to an inference of discrimination.

[3] In briefing, Cheatham states that when he and Regouby worked together on the morning shift, they were subject to the same supervisor, Graffigna.  However, factual statements "appearing only in briefs are not deemed to be a part of the record in the case, unless specifically permitted by the court." LCvR7.1(j).

As to Fenno, Cheatham proffers evidence that he was only terminated after several complaints were received from airline passengers (as well as female employees) about Fenno's behavior. One of those airline passenger complaints was reported to Graffigna, who discussed the incident with Fenno, but did not recommend his termination to anyone "higher up." *See*, doc. no. 45-5, p. 51, ll. 22-25, p. 52, ll. 1-2. However, the record evidence shows that Fenno was not in Graffigna's chain of command. *See*, doc. no. 45-5, p. 51, ll. 11-17. At the time the subject incident occurred, Graffigna was serving as supervisor over the security checkpoint where Fenno was working. *Id*. The airline passenger complained to Graffigna that Fenno had "verbally abused her." Doc. no. 45-7, p. 1. According to the passenger, Fenno stated to her, "If you would shut your mouth and open your[] ears you would hear me" or words to that effect." *Id*., p. 2. After Graffigna questioned Fenno about what he said, Fenno provided a written statement about the incident, and another supervisory transportation security officer met with Fenno regarding the incident. *See*, doc. no. 45-7, p. 2. Although Graffigna testified, upon specific questioning during deposition, that he did not recommend to anyone "higher up" that Fenno be terminated for the incident, there is no indication from that testimony or any other evidence tending to show that Graffigna was asked about, or was involved in any manner in deciding, what discipline, if any, should be imposed upon Fenno based upon the incident. The court concludes that the record evidence is insufficient to raise a genuine issue of material fact on the question of whether he and Fenno shared or dealt with the same supervisor for disciplinary purposes and were similarly situated employees.[4]

---

[4] The record reflects that Cheatham and Fenno were notified of their termination by different individuals. *See*, doc. no. 33-8 and doc. no. 45-7.

5

Turning to Wynns, Cheatham submits evidence that Wynns, who Mayorkas does not dispute was in Graffigna's chain of command, was also involved in the incident that resulted in the complaint against Cheatham, but he was not disciplined. Wynns only received a letter of counseling. However, the court concludes that the evidence fails to raise a genuine issue of material fact that Cheatham and Wynn were similarly situated employees. Although Wynn may have been in Graffigna's chain of command, there is no evidence in the record that Graffigna was involved in the decision to give Wynns a letter of counseling. The letter of counseling was not issued by Graffigna. Doc. no. 45-8. Also, the proffered evidence fails to show that Cheatham and Wynn engaged in conduct of comparable seriousness. According to the evidence, Wynn received the letter of counseling because he "failed to inform the Supervisor about [Cheatham's withholding the airline passenger's property from entering the x-ray machine for screening] or inform [Cheatham] to put the passenger's belongings through the X-ray." *Id.*, p. 1. Cheatham, on the other hand, held back the passenger's property from entering the x-ray machine, and, by assisting other passengers with sending their property into the x-ray machine, delayed the airline passenger's property from entering the x-ray machine. When the passenger questioned where his property was, Cheatham told him it was on the table where he left it. *See*, doc. no. 33-8. Cheatham had control over the airline passenger's property; Wynn did not. Moreover, the airline passenger in question had filed an oral and written complaint against Cheatham and not Wynn. The court concludes that the record evidence as to Cheatham's and Wynn's conduct, even viewed in Cheatham's favor, does not show conduct of comparable seriousness.

In sum, the court concludes that Cheatham fails to proffer evidence sufficient to raise a genuine issue of material fact that Cheatham's termination occurred under circumstances giving rise to an inference of discrimination. Thus, Cheatham fails to raise a genuine issue of material fact on each of the elements of the prima facie case

6

and cannot rely upon the prima facie case to give rise to a presumption that his termination was the result of unlawful discrimination. *See*, Greene v. Safeway Stores, Inc., 98 F.3d 554, 558 (10th Cir. 1996) ("The establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee.") (quotation marks and citation omitted).

2.

Even if the evidence were sufficient to raise a genuine issue of material fact on the question of whether Cheatham's termination occurred under circumstances giving rise to an inference of discrimination, the court, as discussed below, concludes that the evidence is insufficient to raise a genuine issue of material fact as to whether each of Mayorkas's stated legitimate non-discriminatory reasons for termination were pretextual, *i.e.*, unworthy of belief.

Cheatham does not dispute that Mayorkas offers legitimate non-discriminatory reasons for his termination. With his motion, Mayorkas submits the following evidence. On March 5, 2017, Cheatham was appointed to a TSO position subject to a two-year basic trial period. A TSO management directive provided that a supervisor may initiate termination of employment if the supervisor determined at any time during that two-year basic trial period that an employee's performance or conduct was unacceptable. On February 25, 2019, eight days prior to the end of Cheatham's basic trial period, Douglas Townsend (Townsend), Assistant Federal Security Director – Screening, terminated Cheatham's employment. The termination letter stated that the action was taken "to promote the efficiency of the service" and was based on the several stated reasons. Doc. no. 33-8.

According to the letter, on January 21, 2019, Cheatham, while assigned as the divesture officer on lane 4 of the West Annex Security Checkpoint, "engaged in inappropriate and unprofessional conduct when interacting with a passenger." Doc. no. 33-8, p. 1. After a family of three (the family passengers) and a male passenger

placed their personal property in divest bins for screening purposes and pushed the bins towards the x-ray entry belt, Cheatham directed the passengers to stay with their belongings until all items were in the x-ray machine. However, while Cheatham was moving empty divest bins to the head of the divest table, the family passengers and the male passenger were directed to the walk-through metal detector (WTMD) or the advanced imaging technology body scanner by the WTMD officer.[5] "Rather than simply pushing the property through" the x-ray machine for the passengers, plaintiff "purposefully held it back." *Id*. Cheatham assisted a female passenger and five additional passengers move their property "around/over" the family passengers' and the male passenger's property to the x-ray entry belt. *Id*. After approximately five minutes, the male passenger, who was standing with the family passengers by the "x-ray exit conveyor belt/rollers" waiting for their property, stated, "He's not going to push shit through." *Id*. Cheatham began to push the passengers' property into the x-ray machine, when the male passenger yelled "Where's my stuff?" Plaintiff responded by "wagging [his] finger at the passenger" and stating that the "property is 'over on the table where you left it,' or words to that effect." *Id*. According to the termination letter, Graffigna overheard the loud conversation and had to direct Cheatham twice to stop and head to the next screening position.

Next, the termination letter provided that in his written statement about the incident, Cheatham wrote that he tells everyone to make sure they push their property through the x-ray machine or "it will sit there for a sec while [he] handle[s] everyone else." Cheatham wrote that "it 'wasn't a priority' to [him] if the passenger did not make sure he pushed his stuff through" the x-ray machine. Doc. no. 33-8, p. 1. He wrote that he helped the passengers that were behind the male passenger move their property around his things and into the x-ray and that "after a couple of minutes

---

[5] The WTMD officer was Wynns.

of not pushing his stuff through, [Cheatham] decided that it was long enough and was about to push his property through when the passenger yelled, 'Where's my stuff[],'" and Cheatham "told him it was over on the table where he left it." *Id*. at p. 2.

The termination letter additionally provided that after Cheatham met with Graffigna and Transportation Security Manager Douglas Bentley to watch footage of the incident, Cheatham acknowledged that he "deliberately delayed the passenger's property going into the tunnel and that [he] should have just pushed it in." Doc. no. 33-8, p. 2.

The termination letter stated that Cheatham's conduct had violated several sections of TSA Management Directive No. 1100.73-5, and that Cheatham's "inappropriate actions and comments made to the passenger [were] each unacceptable and [would] not be tolerated." Doc. no. 33-8, p. 2. It also stated that "[w]ith the inherent influence of [his] position, [Cheatham] improperly exerted power over four passengers' ability to move through the screening process. This behavior had a direct negative impact on the reputation of the agency, and [struck] at the very heart of the TSA mission for protecting and security the traveling public and the TSA Core Value of Integrity." *Id*.

Lastly, the termination letter stated that prior to the January 21, 2019 incident, plaintiff had been issued three letters of counseling, two for tardiness, and one for leave usage. The termination letter stated that when "employees fail to conduct themselves appropriately and/or report for duty as scheduled, it adversely affects our ability to provide efficient and effective security." Doc. no. 33-8, p. 2.

In addition to the termination letter, Mayorkas proffers evidence of Cheatham's written statement about the incident dated January 23, 2019, doc. no. 33-6, Graffigna's written summary of his investigation of the incident and his

conclusion regarding Cheatham's conduct, doc. no. 33-7, and the letters of counseling, doc. no. 33-4.

The court concludes that Mayorkas's proffered evidence satisfies his burden of production. *See*, Reeves v. Sanderson, 530 U.S. 133, 142 (2000) (the employer's "burden is one of production, not persuasion[.]"). The question therefore becomes whether Cheatham proffers evidence to raise a genuine issue of material fact as to whether the legitimate non-discriminatory reasons offered by Mayorkas are a pretext for discrimination.

3.

"A plaintiff may show pretext 'by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Luster v. Vilsack, 667 F.3d 1089, 1092-1093 (10th Cir. 2011) (quoting Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007)). With his response, Cheatham proffers evidence sufficient to raise a genuine issue of material fact as to whether he wagged or pointed his finger at the male passenger during the January 21, 2019 incident. Specifically, in making his complaint, the passenger never mentioned that Cheatham wagged or pointed his finger at him. *See*, doc. no. 45-17. Cheatham also proffers evidence and there is evidence in the record sufficient to raise a genuine issue of material fact as to whether Graffigna overheard a loud conversation between Cheatham and the passenger and whether Graffigna twice directed Cheatham to stop and head to the next screening position. *See*, doc. no. 45-3, p. 17, ll. 22-25, p. 18, 1. 1, ll. 10-13; doc. no. 33-9. Further, Cheatham proffers evidence sufficient to raise a genuine issue of material fact as to whether the letters of counseling, which defendant concedes were corrective, rather than disciplinary, actions, were a reason for the

employer's decision to terminate him. *See*, doc. no. 45-9, 45-10, 45-11, 45-12, 45-13, 45-14, 45-15, 45-16.

Nevertheless, the court finds Cheatham fails to proffer evidence sufficient for a reasonable jury to find that the employer's other stated reasons for removal—Cheatham purposefully held back the passenger's personal property; he assisted other passengers, who were behind the male passenger, move their property around his things and into the x-ray machine; when the male passenger questioned where his belongings were, Cheatham told him they were on the table where he left them; Cheatham deliberately delayed the passenger's personal property from going into the x-ray machine; and he improperly exerted power over the four passengers' ability to move through the screening process—are unworthy of belief or credence. Cheatham's own written statement of the incident, two days after the incident, indicates that he helped other passengers, who were behind the male passenger, move their personal property around his personal property and put their personal property in the x-ray machine. Doc. no. 33-6. And Cheatham stated in that statement that "[a]fter a couple of minutes of not pushing [the male passenger's] stuff through, [he] decided that it was long enough and was about to push his property through," when he heard the passenger make a critical comment. After that, he decided to continue to help passengers in front of him divest their property. When the male passenger questioned where his belongings were, Cheatham told him they were on the table where he left them. The termination letter cited Cheatham's statements in his written statement in setting forth the reasons for his termination.

Cheatham asserts that Townsend's statement in the termination letter that he acknowledged he deliberately delayed the passenger's property from going into the x-ray machine is "blatant hearsay" and, thus, inadmissible. Doc. no. 45, pp. 17, 27. However, the court finds that Cheatham's acknowledgment statement qualifies as an admission of a party opponent under Rule 801(d)(2)(A), Fed. R. Evid. And based

11

upon the record before it, the court concludes that the termination letter, which was required by TSA Management Directive No. 1100.31-1 to be in writing and state the underlying reasons for the action, falls within the business record exception under Rule 803(6), Fed. R. Evid. In any event, even if the acknowledgment were inadmissible, Cheatham does not submit evidence sufficient to raise a genuine issue of material fact as to whether he purposefully held back the passengers' property; assisted other passengers that were behind the male passenger move their property around the male passenger's things and into the x-ray machine; told the male passenger, upon questioning of where his belongings were, that they were on the table where he left them; and improperly exerted power over the four passengers' ability to move through the screening. The fact that Cheatham understood or was trained that a passenger was to push his belongings through the x-ray machine and to stay with his property is not sufficient to raise a genuine issue of material fact as to whether the employer's stated justifications for his termination were a pretext for discrimination.

"[A]s a general rule, an employee must proffer evidence that shows *each* of the employer's justifications are pretextual." Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1309 (10th Cir. 2005) (quotation marks and citations omitted) (emphasis added). "Debunking one of the employer's explanations defeats the case for summary judgment only if the company has offered no other reason that, *if that reason stood alone* (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining." Id. (quotation marks and citation omitted).

Here, the evidence shows that Mayorkas set forth several reasons for termination. In the termination letter, Townsend indicated that Cheatham's "inappropriate actions and comments made to the passenger are *each* unacceptable and will not be tolerated." Doc. no. 33-8 (emphasis added). Thus, Cheatham's

12

actions, other than those that Cheatham proffers evidence to genuinely dispute, would have supported the employer's decision to terminate Cheatham. And Cheatham's written statement substantiates that those actions did in fact occur.

The court recognizes that "[i]n some cases, [] a successful attack on part of the employer's legitimate, non-discriminatory explanation is enough to survive summary judgment even if one or more of the proffered reasons has not been discredited." Jaramillo, 427 F.3d at 1310. As the Tenth Circuit has explained: "[s]omething less than total failure of the employer's defense is sufficient to create a genuine issue of fact when (1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid; (2) the pretextual character of one explanation is so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks all credibility; (3) the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them; (4) the plaintiff discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision; or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith." Jaramillo, 427 F.3d at 1310 (quotation marks and citation omitted). However, none of these circumstances apply in this case.

The court opines the alleged finger wagging, speaking loudly to the passenger, and being told twice to stop and rotate to his next position, as claimed by Graffigna, and the letters of counseling for tardiness and leave usage are not so intertwined with the other actions set forth by Townsend that a showing of pretext as to the former raises a question as to whether the other actions are valid justifications for termination. And in the court's view, this alleged conduct, and the letters of counseling are not "so fishy and suspicious" that the jury could find that the employer or its decisionmaker lacks all credibility. Although Mayorkas offers several reasons for the termination, the court does not conclude that they constitute

13

a "plethora" of reasons for the adverse action. Further, Cheatham's evidence does not discredit all objective explanations for his termination. Finally, Mayorkas has not changed his explanation as to the reasons for Cheatham's termination so as to suggest dishonesty or bad faith on the employer's part. Therefore, the court finds that the fact that Cheatham raises genuine issues of fact as to some of Mayorkas's stated justifications for supporting termination does not raise a genuine issue of material fact as to the remaining justifications.

In briefing, Cheatham contends that Mayorkas's reasons for his termination are unworthy of belief or credence because when he met with Townsend, he advised him that the termination letter contained false information, particularly as it related to statements made by Graffigna, and that when Cheatham attempted to rebut the false information, Townsend replied that "he was not there to go over what was true and what was not, his hands were tied and the decision was final." Doc. no. 45-3, p. 22, ll. 2-9. Also, he points out that Townsend relied on second-hand information from Graffigna to make the removal decision. The court, however, concludes that Townsend's refusal to consider Cheatham's challenge to the accuracy of the information set forth in termination letter and to rely upon second-hand information does not raise a genuine issue of material fact as to whether Mayorkas's justifications for termination were unworthy of belief or credence. According to TSA Management Directive No. 1100.31-1, § 7.B (1) and (2) (doc. no. 33-2, p. 5), an employee who is terminated during the basic trial period not only does not have appeal or grievance rights regarding the termination, but he also has no right to rebut or reply to the termination notice. Thus, Townsend did not have to offer Cheatham an opportunity to rebut the reasons for termination when he gave Cheatham the termination letter. The court notes, however, that Townsend, prior to making the termination decision, considered Cheatham's written statement regarding the

incident. The information provided by that statement was specifically cited in the termination letter.

As to second-hand information, the record indicates that Townsend was not present at the January 21, 2019 incident. Consequently, he had to consider information obtained by Cheatham's supervisor, Graffigna, during the investigation process. Although Cheatham contends that Graffigna provided inaccurate information to Townsend, Cheatham does not show that this inaccurate information related to Cheatham's actions with respect to the passenger's property. In his written summary, Graffigna concluded that Cheatham intentionally held the passenger's property from being screened, which not only delayed that passenger, but also the family of three. *See*, doc. no. 33-7. The evidence in the record does not raise a genuine issue of material fact as to whether that conclusion was inaccurate. Cheatham's own written statement supports the conclusion.

Cheatham additionally argues that the disparate treatment of similarly situated employees, Fenno, Regouby, and Wynns, raises a genuine issue of material fact on the issue of pretext. However, as previously discussed, Cheatham's proffered evidence fails to show that Fenno, Regouby, and Wynns were similarly situated employees.

Further, to raise a genuine issue of material fact on the issue of pretext, Cheatham proffers evidence that (1) Graffigna admitted during deposition that he had a "really horrible memory;" (2) Lead Transportation Security Officer Brian Wilson (Wilson), who was present during the January 21, 2019 incident, gave a written statement that he did not witness any altercation between Cheatham and the male passenger; (3) Graffigna, after receiving Wilson's written statement of his version of what happened during the January 21, 2019 incident, went back and asked Wilson whether he needed to add anything else to his written statement, and Wilson, after providing written statements for other incidents, was not asked by anyone if he

15

needed to add information; (4) Graffigna testified in deposition that he could not recall talking to Wilson about adding information; (5) Graffigna did not ask senior TSO Allyn Richardson, who was also assigned to the security checkpoint on January 21, 2019, to make a written statement, and Richardson observed no wrongdoing on the part of Cheatham; and (6) Graffigna told the male passenger, when he orally complained of Cheatham's conduct, that he "saw the [whole] thing and [Cheatham] was at fault" and he "[had] issues with [Cheatham] already," but Graffigna testified in deposition that he did not recall making those statements to the passenger and that he did not see the entire interaction between Cheatham and the passenger.

However, viewing this evidence in Cheatham's favor, the court concludes that the evidence is insufficient to raise a genuine issue of material fact that the employer's reasons for termination—purposefully holding back the passenger's personal property; assisting other passengers that were behind the male passenger move their property around the male passenger's things and into the x-ray machine; telling the male passenger, when asked about the location of the property, that the property was over on the table where he left it; deliberately delaying the passenger's personal property from going into the x-ray machine; and improperly exerting power over the four passengers' ability to move through the screening process—are unworthy of belief or credence. The record evidence, viewed in Cheatham's favor, does not call into question the truthfulness of these justifications for termination.

Lastly, in briefing, Cheatham argues that Mayorkas breached its written policy in terminating his employment. A plaintiff may show pretext by evidence that the employer acted contrary to a written or unwritten policy or company practice when making the adverse employment decision. Kendrick, 220 F.3d at 1230. TSA Management Directive No. 1100.31-1 provides that "[s]upervisors must not wait until the end of the basic trial period to terminate an employee's employment if it is determined earlier that the employee should not be retained." Doc. no. 33-2, p. 13.

However, the court is not persuaded that Cheatham's termination eight days before the end of the basic trial period raises a genuine issue of material fact as to pretext. The January 21, 2019 incident occurred toward the end of the basic trial period. After receipt of the passenger's written complaint, the matter was referred to managers for review, and Cheatham prepared a written statement on January 23, 2019, and Graffigna prepared a written summary of the investigation of the matter dated February 4, 2019.  Cheatham proffers no evidence, and there is not evidence in the record, as to when the written summary, and other information (such as Cheatham's written statement) was provided to Townsend.  There is no evidence in the record to indicate that Thompson's termination letter was not issued promptly after the termination decision was made.  The court concludes that Cheatham fails to present evidence sufficient to raise a genuine issue of material fact that Mayorkas breached the management directive by terminating him on February 25, 2019.

In sum, the court concludes that evidence in the record fails to raise a genuine issue of material fact as to whether each justification proffered by Mayorkas for Cheatham's termination, as stated in the termination letter, is unworthy of belief or credence.  The court therefore concludes that Mayorkas is entitled to summary judgment on Cheatham's Title VII claims for race and sex discrimination.

IV.

For the reasons stated, Defendant's Motion for Summary Judgment (doc. nos. 33, 34) is **GRANTED**.  A judgment shall be entered separately.

IT IS SO ORDERED this 15th day of August, 2022.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0339p010 rev_.docx